UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
─────────────────────────────────
SECURITIES AND EXCHANGE COMMISSION,

            Plaintiff,

    -against-

JOSEPH M. LAURA, ANTHONY SICHENZIO,
and WALTER GIL DE RUBIO,

            Defendants.
─────────────────────────────────

**MEMORANDUM & ORDER
18-CV-5075 (NGG) (VMS)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Securities and Exchange Commission (the "SEC") instituted this action against Defendants, alleging primary and derivative violations of §§ 10, 15, and 17 of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder. (*See generally* Compl. (Dkt. 1).) The SEC alleges that Defendants made false representations to induce third-parties to invest in Pristec America, Inc. ("PAI"),[1] a partial subsidiary of Austrian corporation Pristec AG ("PAG"), and misappropriated invested funds for their own benefit. (*Id.*)

Laura and Sichenzio (the "Moving Defendants") move to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6)-(7), arguing that: (1) PAG and its CEO are necessary parties within the meaning of Rule 19 and the SEC's failure to join them mandates dismissal, (2) many of the allegations in the complaint relate to conduct that occurred outside of the governing limitations period and should be struck, and (3) the complaint fails to satisfy Rule 9(b)'s heightened pleading requirements. (Defs.

---

[1] As noted in the complaint, there are two U.S.-based entities with this name, one incorporated in New Jersey ("PAI-NJ") and the other incorporated in Nevada ("PAI-NV"). (Compl. ¶ 8.) In keeping with the complaint and motion papers, the court uses "PAI" to refer to both entities.

1

Mem. in Supp. of Mot. to Dismiss ("Mem.") (Dkt. 37-1); SEC Opp. to Mot. to Dismiss ("Opp.") (Dkt. 37-8); Defs. Reply in Further Supp. of Mot. to Dismiss ("Reply") (Dkt. 37-10).)

For the reasons that follow, the motion is DENIED.

## I. BACKGROUND

### A. Statement of Facts

The following factual summary is drawn from the facts alleged in the complaint, which the court generally accepts as true for the purpose of adjudicating the Moving Defendants' motion to dismiss. *See, e.g., N.Y. Pet Welfare Ass'n v. City of New York*, 850 F.3d 79, 86 (2d Cir. 2017).[2] Further, for the reasons discussed in Section III, *infra*, this summary largely excludes allegations of misconduct that occurred prior to June 2013.

PAI is the umbrella name for two U.S. corporations, PAI-NV and PAI-NJ, that were, at all times relevant to the complaint, owned in equal share by PAG and Innovative Crude Technologies ("ICT"), a U.S. corporation owned in equal share by Laura and Sichenzio that has no employees or independent operations. (Compl. ¶¶ 17-18.)[3] In 2010, ICT purchased a minority stake in PAG. (*Id.*) PAG itself was established in 2006 to develop and commercialize new technology to be used in connection with the

---

[2] The Moving Defendants submitted a considerable amount of evidence in support of their motion. (*See* Dkts. 37-2 to 37-6.) "It is a generally accepted principle that the court is not limited to the pleadings on a 12(b)(7) motion," *Am. Ins. Co. v. Kartheiser*, No. 17-cv-5545 (JMF), 2018 WL 2388533, at *1 (S.D.N.Y. May 25, 2018) (citation omitted), and, accordingly, the court has reviewed the materials in connection with its consideration of the Moving Defendants' motion to dismiss under Rule 12(b)(7). However, insofar as the Moving Defendants rely on this evidence in support of their Rule 12(b)(6) motion, the court declines to consider such materials except to the extent that they are referenced in or integral to the complaint.

[3] ICT was originally incorporated in February 2010 under the name "Pristec America, Inc.," before being renamed in October 2010.

refining of crude oil. (*Id.* ¶ 16.) One such technology is to facilitate "cold cracking," a process for refining heavy crude oil using pressure waves. (*Id.*; *see also* Mem. at 8-9.) Laura established PAI-NJ and PAI-NV in September 2011 and September 2013 respectively for the purpose of commercializing PAG's technology in the U.S., Canada, Mexico, and Colombia. (Compl. ¶ 18.) At all relevant times, and at least until April 2017, Laura controlled PAI, holding multiple corporate titles, including CEO, President, Treasurer, and Board Chair. (*Id.* ¶¶ 13, 100.)

Laura first introduced Sichenzio to PAI/ICT in April 2010 allegedly pitching it as a way for Sichenzio to recover over a million dollars that Laura owed him in connection with an unspecified failed real estate venture and personal loans. (*Id.* ¶ 19.) Sichenzio agreed to fund ICT's purchase of an equity interest in PAG and, at least until April 2017, held several positions within PAI, including Vice President, Secretary, Vice Chairman, as well as a seat on PAI's board. (*Id.* ¶¶ 14, 19, 100.)[4]

The complaint alleges that Laura and Sichenzio fraudulently solicited investments in PAI from individuals and, further, that Laura misappropriated a significant percentage of investors' money for the benefit of himself and Sichenzio. For example, between June and September 2013, Laura and Sichenzio presented prospective investors with revenue sharing contracts that represented that PAI "owns exclusive global rights" to PAG's cold-cracking technology and anticipated it would begin commercial production "on or about April 1, 2014." (*Id.* ¶ 63.) In reality, however, PAI never owned the technology and did not acquire a

---

[4] Walter Gil de Rubio, who is also named as a Defendant but did not join in the instant motion, also became involved with PAI at Laura's behest, allegedly with the goal of recovering approximately $850,000 that Laura owed him as a result of unspecified "personal loans and other unsuccessful business ventures." (*Id.* ¶¶ 15, 20-21.) As Gil de Rubio has not joined in the instant motion, however, the court omits further discussion of his role in the alleged fraud described in the complaint.

license to use it until October 2014, when it entered into an agreement with PAG under which PAI acquired an exclusive license to use the technology in the U.S., Canada, Mexico, and Colombia with nonexclusive rights in the rest of the world. (*Id.* ¶¶ 64-65; *see also* Patent, Technology, and Know-How License Agreement (Dkt. 37-3 at ECF 52-62).)[5] The revenue share contracts, moreover, contained projections indicating that investors would receive astronomical returns without providing an explanation for the basis of those returns or any cautionary language indicating the numerous potential obstacles that the venture might face. (Compl. ¶¶ 61-62.) Separate documents Laura drafted and circulated to Sichenzio indicate contemporaneous awareness on their part of the actual risks that they failed to disclose to prospective investors. (*Id.* ¶ 80.)

Laura and Sichenzio are also alleged to have repeatedly misrepresented to potential investors how their money was going to be used. For example, all of the contracts presented to potential investors stated that PAI and/or PAG needed "working capital" to fund the roll-out of the company's technology, and Laura is alleged to have made specific oral representations to investors that their money would be used for, *inter alia*, machinery, lawyers, and accountants. (*Id.* ¶¶ 45-46.) In reality, however, "a significant portion of the investors' funds raised during this period were used to pay for Laura's personal expenses, to make payments to Sichenzio . . . and to pay for businesses and debt unrelated to PAI's purported oil processing technology activities." (*Id.* ¶ 48.) Specifically, between May 2013 and January 2017, Laura allegedly misappropriated at least $3.7 million, which is approximately half of the investor funds that he had raised during this timeframe. (*Id.* ¶ 49-51.) Laura used these funds on, *inter*

---

[5] The court notes that the Moving Defendants dispute, among a great many other things, that the license agreement was formed in October 2014 and backdated to October 2013. (Mem. at 15.)

*alia*, payments to individuals and entities who provided no goods or services to PAI, to settle a lawsuit against him in connection with an alleged "real estate scam," medical bills, gym memberships, and groceries. (*Id.*) In some instances, Laura and Sichenzio deposited investor funds directly into personal bank accounts. (*Id.* ¶ 52.) Defendants allegedly endeavored to conceal these efforts by, among other things, not maintaining a complete set of records, repeatedly failing to provide PAI's accountant with access to PAI and ICT's respective bank statements, and allegedly lying to regulatory agencies. (*Id.* ¶¶ 87-90, 96.)

After being removed from their officer positions at PAI, Laura and Sichenzio allegedly continued to raise funds in PAI's name, accepting $525,000 in "apparent investment funds" between June and December 2017, most of which they allegedly misappropriated for their own benefit. (*Id.* ¶ 100.)

### B. Procedural History

The SEC initiated this action on September 7, 2018. The Moving Defendants served their motion on March 29, 2019, and the motion was fully briefed on May 31, 2019. While the motion was pending, the Moving Defendants filed several supplemental letters, to which the SEC responded. (*See* Dkts. 38-39, 43-44, 48-51.) Discovery was not stayed pending the resolution of this motion and remains ongoing before Magistrate Judge Vera M. Scanlon.

## II. THE MOVING DEFENDANTS' RULE 12(B)(7) MOTION

Laura and Sichenzio contend that the complaint must be dismissed because PAG is an indispensable party "that is clearly subject to jurisdiction here because it is actively arbitrating claims that overlap with this action." (Mem. at 9-10; *see also id.* at 9-

5

19.)[6] Federal Rule of Civil Procedure 12(b)(7) permits a party to move for failure to comply with the compulsory joinder rules set forth in Rule 19. Rule 19 provides, in relevant part, that:

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> > (A) in that person's absence, the court cannot accord complete relief among existing parties; or
> >
> > (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> >
> > > (i) as a practical matter impair or impede the person's ability to protect the interest; or
> > >
> > > (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

The Moving Defendants contend that the allegations in the complaint are factually incorrect and clearly based on false information that PAG provided to the SEC. (*See, e.g.*, Mem. at 11-12.) The Moving Defendants also argue that because the claims directly implicate the viability of PAG's cold-cracking technology, which is patented, this court should follow the rule applicable to patent infringement actions, *i.e.*, that all parties with an interest in the underlying patent must be joined before an infringement action may proceed. (*Id.* at 11 (citing, *inter alia*, *Advanced Video Techs. LLC v. HTC Corp.*, No. 15-cv-4626 (CM), 2016 WL 3434819, at *7 (S.D.N.Y. June 14, 2016)).) The SEC contends in

---

[6] Laura and Sichenzio have indicated that the arbitration has since concluded. (*See* Sept. 18, 2019 Letter from Moving Defs. (Dkt. 48).)

response that Rule 19 presumptively does not apply to its enforcement proceedings and that, in any event, PAG is not a necessary party to this proceeding. (*See* Opp. at 14-17.)[7]

On the threshold issue, the court agrees with the SEC that Rule 19 is presumptively inapplicable to SEC enforcement proceedings and, further, that the Moving Defendants have not made the extraordinary showing required to rebut that presumption.

Congress entrusted the decision as to whether to institute enforcement proceedings under the Securities Exchange Act to the SEC's discretion. *See* 15 U.S.C. §§ 77t(b), 78u(d)(1). And, under the rule announced in *Heckler v. Chaney*, an administrative agency's discretionary election *not* to institute enforcement proceedings is "presumptively unreviewable" absent a showing that the decision in question was "so extreme as to amount to an abdication of [the agency's] statutory responsibilities." 470 U.S. 821, 832-33 & n.4 (1985); *see also* 5 U.S.C. § 701(a)(2) (excepting from judicial review "agency action [that] is committed to agency discretion by law"). Further, although there is no binding precedent that speaks directly to whether Rule 19 can be invoked in an enforcement proceeding, there is a long and consistent line of persuasive authority holding that Rule 19 generally cannot be invoked in SEC enforcement proceedings and, as far as the court is aware, no court to have examined the issue has concluded otherwise. *See SEC v. Norsta Energy, Inc.*, No. 15-cv-4751 (WHP), 2016 WL 4530893, at *1 (S.D.N.Y. Jan 19, 2016) (collecting cases); *see also SEC v. Princeton Econ. Int'l Ltd.*, 99-cv-9667 (RO),

---

[7] Laura and Sichenzio also argue for the first time on reply that PAG's CEO is also a necessary party. (Reply at 3-5.) Likewise, certain passages of Laura and Sichenzio's papers could be read as arguing that non-party Earle Refining must also be joined as a necessary party (*see* Opp. at 21), a position that they explicitly take in a subsequent letter (*see* Sept. 18, 2019 Letter (Dkt. 48)). These arguments were not properly raised; however, were the court to nonetheless consider them, it would reach the same conclusions for the reasons stated herein.

2001 WL 102333, at *1 (S.D.N.Y. Feb. 7, 2001) ("The SEC and the CFTC are the sole architects of their enforcement proceedings and [Defendant] may not circumvent the exercise of agency discretion through compulsory joinder rules."). The Moving Defendants argue that these persuasive cases are inapposite because none involves the SEC suing individuals for securities fraud without joining the company that issued the securities, as is the case here. (*See* Reply at 5-7). The Moving Defendants fail, however, to account for the fact that these cases announce a rule of general applicability and offer no persuasive argument as to why that rule should not apply here.

Seeing no reason to depart from the reasoning of every other court to have considered this issue, the court holds that Rule 19 is presumptively inapplicable to SEC enforcement proceedings absent a showing of an abuse of discretion tantamount to an abdication of the agency's statutory responsibilities. The Moving Defendants do not even meaningfully attempt to meet this standard, and the court has reviewed the supplemental materials annexed to their motion and cannot discern any basis to support such a significant finding.

Moreover, it is not at all clear that PAG would qualify as a necessary party even if Rule 19 did apply. The Moving Defendants make virtually no attempt to anchor their argument for PAG's joinder in the actual text of that rule or any relevant case law. Indeed, they generally cite no case law beyond intellectual property cases that have no application in this securities fraud proceeding where neither the legal validity of PAG's patents nor any potential infringement of those patents is at issue. Boiled down to its essence, the remainder of the Moving Defendants' argument appears to be that the allegations in the complaint are untrue, and that PAG is the source of those allegations, and that PAG even misled the Moving Defendants themselves. Perhaps they are right, and they will have ample opportunity to present

that case; the court, however, is unaware of any law to support the proposition that PAG is therefore a necessary party to this proceeding.[8]

Accordingly, Laura and Sichenzio's motion to dismiss the complaint for failure to join a necessary party under Rule 12(b)(7) is DENIED.

### III. THE MOVING DEFENDANTS' RULE 12(B)(6) MOTION

Laura and Sichenzio also move for dismissal for failure to state a claim, arguing that: (1) many of the allegations in the complaint concern conduct that occurred outside of the applicable limitations period and must be struck, and (2) the complaint does not meet the heightened pleading standards of Rule 9(b). (Mem. at 19-25.)

#### A. Statute of Limitations

This case is governed by 28 U.S.C. § 2462's five-year statute of limitations. *See Kokesh v. SEC*, 137 S. Ct. 1635, 1639 (2017). Accordingly, accounting for the parties' tolling agreements (*see* Dkt. 37-9), which the court assumes for the purpose of this motion to be valid and enforceable, the SEC cannot obtain relief for any conduct occurring prior to June 2, 2013. The SEC, for its part, does not dispute any of this. (Opp. at 17-18.)

Contrary to the Moving Defendants' contentions, however, the "vast majority of alleged misconduct" did not occur outside the limitations period. (Mem. at 19.) The complaint, in fact, alleges extensive misconduct occurring within the limitations period.

---

[8] The Moving Defendants' argument that PAG is a necessary party because they otherwise will be unable to obtain discovery because PAG is located in Austria is likewise unavailing. This argument, in support of which the Moving Defendants cite no case law, is directly contradicted by their claim that PAG is "clearly subject to jurisdiction here." (Mot. at 9.)

(*See* Compl. ¶¶ 42-103). As to the allegations of misconduct occurring without the limitations period, the SEC asserts that these acts will serve as inferential proof of the Moving Defendants' scienter. (Opp. at 18-19.) Specifically, the SEC relies on *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114-115 (2002) and *Chin v. Port Authority of N.Y. & N.J.*, 685 F.3d 135, 150 (2d Cir. 2012) to argue that the allegations of misconduct outside of the limitations period is relevant background evidence to assess the Moving Defendants' timely acts of misconduct. (Opp. at 18-19.) In their reply papers, the Moving Defendants entirely fail to address the SEC's argument as to this issue.

While the rule permitting courts to consider certain untimely conduct as "background" evidence is well established in the context of Title VII claims, the court is unaware of any instance in which a court within this circuit has applied this framework to a securities fraud action.[9] There is no need, however, to resolve this question at such an early stage of this proceeding, because, as discussed below, the complaint would survive even if the court were to consider only the timely allegations of misconduct. Likewise, because the underlying legal issue is not yet ripe for resolution, there is no need for the court to take the drastic step of striking the pre-limitations allegations from the complaint. The SEC may gather its evidence of pre-limitations conduct, and the Moving Defendants may, at the appropriate time, offer their objections to the relevance and admissibility of that evidence.

---

[9] There is, however, one out-of-circuit decision supporting the SEC's position. *See SEC v. Mapp*, No. 16-cv-246, 2017 WL 5177960, at *5 (E.D. Tex. Nov. 8, 2017) (permitting introduction of pre-limitations conduct "as evidence in support of timely claims for violations of securities law" (citing *Morgan*, 536 U.S. at 114-15)).

### B. Rule 9(b)

#### 1. Legal Standard

The purpose of a motion to dismiss for failure to state a claim under Rule 12(b)(6) is to test the legal sufficiency of a complaint. *Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (per curiam). A complaint will survive a motion to dismiss if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Complaints that allege fraud must also meet the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b), which provides that "[i]n alleging fraud . . . a party must state with particularity the circumstances constituting fraud." In a securities fraud action, this requires a plaintiff to: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *ATSI Comms., Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007) (citation omitted). "However, the rule is not intended to be an insurmountable hurdle for claimants to overcome, but was designed to afford defendants fair notice of the fraud alleged against them." *SEC v. Power*, 525 F. Supp. 2d 415, 423 (S.D.N.Y. 2007) (citation and internal quotation marks omitted) (alteration adopted); *see also In re Scholastic Corp. Secs. Litig.*, 252 F.3d 63, 72 (2d Cir. 2001) ("Even with the heightened pleading standard under Rule 9(b) . . . we do not require the pleading of detailed evidentiary matter in securities litigation." (citation omitted)).

In alleging scienter, a plaintiff must plead facts giving rise to a strong inference of fraud that is "at least as compelling as any

opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007). This can be accomplished either "by alleging facts to show that defendants had both motive and opportunity to commit fraud, or by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Novak v. Kasaks*, 216 F.3d 300, 307 (2d Cir. 2000). However, "[c]onclusory allegations of scienter are sufficient if there exists a minimal factual basis giving rise to a strong inference of fraudulent intent." *SEC v. Alt. Green Techs., Inc.*, No. 11-cv-9056, 2012 WL 4763094, at *3 (S.D.N.Y. 2012) (citations and internal quotation marks omitted) (alterations adopted).

Finally, although the question of whether pre-limitations conduct may be used as evidence of scienter when assessing post limitations conduct remains open, this court has previously held that the SEC cannot pursue injunctive relief based entirely on pre-limitations conduct. *See generally SEC v. Cohen*, 332 F. Supp. 3d 575 (E.D.N.Y. 2018). Accordingly, for the purpose of this motion, the court first assesses whether the timely allegations, taken alone, plausibly state a claim and, having concluded that they do, goes no further.

      2.    Discussion

Although the Moving Defendants do not style their motion as one for partial dismissal, they address only the SEC's § 10(b) and 17(a) claims, and only in highly general terms. The court thus limits its discussion to these claims and, further, addresses only those arguments actually raised by the Moving Defendants.

"In general, to prove a claim under these provisions, the SEC must show that the [Defendants]: (1) committed a deceptive or manipulative act, or made a material misrepresentation (or a material omission if the defendant had a duty to speak) or used a fraudulent device; (2) with scienter; (3) which affected the market for securities or was otherwise in connection with their offer,

sale, or purchase." *Power*, 525 F. Supp. 2d at 419 (citation omitted). Scienter, however, is not an element of a claim under §§ 17(a)(2) or 17(a)(3), under which some of the claims against Sichenzio are asserted. *Id.* (citing *Aaron v. SEC*, 446 U.S. 680, 697 (1980)).

As an initial matter, Laura and Sichenzio's assertion that the complaint "fails to give the specifics of the allegedly fraudulent acts" (Mem. at 21) is puzzling considering the detailed lists of allegedly false statements sprinkled throughout the complaint and the reasons that the Moving Defendants knew or should have known of their falsity. (*See, e.g.*, Compl. ¶¶ 46, 49-58 (detailing specific verbal misrepresentations made by Laura concerning use of investor funds and factual allegations supporting inference of knowledge of or reckless/negligent disregard of falsity, as applicable); *id.* ¶¶ 60-65 (detailing alleged misrepresentations in revenue sharing contracts, including those drafted by Laura, and contemporaneous communications supporting inference of knowledge of or, as applicable, reckless/negligent disregard of falsity); *id.* ¶¶ 69-83 (detailing additional oral and verbal misrepresentations and factual allegations supporting inference of knowledge of or reckless/negligent disregard of falsity, as applicable).[10] Equally puzzling is the Moving Defendants' assertion that the complaint contains no allegations to suggest that the anticipated production dates provided in some investor contracts "conflicted with the information available to [the Moving] Defendants at the time." (Mem. at 22 (quoting *Tongue v. Sanofi*, 816 F.3d 199, 213 (2d Cir. 2016) (alterations adopted)).) Indeed, the complaint contains numerous specific allegations demonstrating

---

[10] While the SEC does not always allege the specific date or time of each such misrepresentation, contrary to the Moving Defendants' contentions, this is not fatal to the complaint. *See, e.g.*, *KCB Americas LLC v. Brazilmed, LLC*, No. 15-cv-4600 (AT), 2016 WL 900396, at *3 (S.D.N.Y. Feb. 26, 2016) ("Rule 9(b) does not require that a complaint plead fraud with the detail of a desk calendar or a street map" (citation omitted)).

at least a plausible inference that the Moving Defendants knew that these projections were baseless, including the fact that PAI itself did not have cold-cracking units, the funds to build them, or contracts to have them built, and that prior pilot tests of the technology that PAG had conducted had taken a considerable amount of time and yielded mixed results. (Compl. ¶¶ 77-78.) This is in addition to the fact that Laura had documented his own contemporaneous awareness of some of these risk factors and shared them with Sichenzio. (*Id.* ¶¶ 80-81.)

Similarly unavailing is Laura's argument that the funds he is alleged to have misappropriated were a "modest salary." (Mem. at 24.) Laura relies on a single summary judgment case in which Judge Castel noted that the business plan at issue in that case indicated that money raised in connection with the relevant offering would be used for, *inter alia*, "general working capital, including salaries," *SEC v. Empire Dev. Grp., LLC*, No. 07-cv-3896 (PKC), 2008 WL 2276629, at *2 (S.D.N.Y. May 30, 2008), to argue that his representation to investors that their money would be used for "general working capital" necessarily encompassed his salary. (Mem. at 24.) This argument is, to put it mildly, extraordinarily weak, particularly in light of other precedent on this issue. *See SEC v. Research Automation Corp.*, 585 F.2d 31, 35-36 (2d Cir. 1978) ("What reasonable investor would not wish to know that the money raised by stock sales would not be used for working capital but be diverted to [the corporation]'s officers?"); *SEC v. Premier Links Inc.*, No. 14-cv-7375 (CBA) (ST), 2017 WL 7792702, at *5 (E.D.N.Y. 2017) (same). Moreover, even if the court were to credit this argument (and ignore allegations that Laura endeavored to recharacterize the funds he misappropriated as loans from the company), a salary comprising half of the total funds raised by investors cannot plausibly be characterized as "modest," so as to support the conclusion that, as a matter of law, Laura did not appropriate investor funds.

14

In sum, this complaint is, if anything, more detailed than the average securities fraud complaint that would survive a motion to dismiss. Again, it may well be the case, as Laura and Sichenzio argue, that its allegations are simply not true and that PAG is the real party at fault. (*See, e.g.*, Reply at 8.) At this stage, however, the court must accept the SEC's representations as true and, having done so, it can discern no basis for dismissal. Accordingly, Laura and Sichenzio's motion to dismiss the complaint under Rule 12(b)(6) is DENIED.

## IV. CONCLUSION

For the foregoing reasons, Joseph Laura and Anthony Sichenzio's (Dkt. 37) Motion to Dismiss the Complaint is DENIED.

SO ORDERED.

Dated: Brooklyn, New York
March 24, 2020

/s/ Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge