UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- x
SECURITIES AND EXCHANGE                    :
COMMISSION,                                :
                                           :
                  Plaintiff,               :               **ORDER**
                                           :
                  -against-                :               18 Civ. 5075 (NGG) (VMS)
                                           :
JOSEPH M. LAURA, ANTHONY SICHENZIO,        :
and WALTER GIL DE RUBIO,                    :
                                           :
                  Defendants.              :
                                           :
                                           :
-------------------------------------------------------- x

**Scanlon, Vera M., United States Magistrate Judge:**

Plaintiff Securities and Exchange Commission ("SEC") commenced this action against

Defendants Joseph M. Laura ("Defendant Laura"), Anthony Sichenzio ("Defendant Sichenzio"),

and Walter Gil de Rubio ("Defendant Gil de Rubio"), alleging primary and derivative violations

of §§ 10, 15, and 17 of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated

thereunder. See ECF No. 1 (hereinafter "Compl.").

Before the Court is an application made by Defendants Laura and Sichenzio ("Moving

Defendants") and nonparties to quash aspects of SEC subpoenas served upon third-party

financial institutions seeking financial account records for various entities and individuals

including (i) the Defendant Laura-owned U.S. corporations New Vacuum Technologies LLC and

New Vacuum Technologies of New Jersey, Inc. (collectively "New Vacuum"); (ii) Defendant

Laura's sister Grace Laura Vagnone ("Ms. Vagnone"); (iii) Defendant Laura's wife Daniela Reis

("Ms. Reis"); (iv) Defendant Sichenzio's wife Patricia Sichenzio ("Ms. Sichenzio") (hereainfter

the Court will refer collectively to nonparties New Vacuum, Ms. Vagnone, Ms. Reis and Ms.

Sichenzio as "Nonparty Objectors"); (v) nonparty PAI; and (vi) Moving Defendant Sichenzio.

1

See ECF No. 73.  Moving Defendants originally filed the application, and the Nonparty

Objectors later appeared and joined in making the motion (hereinafter the Court will collectively

refer to Moving Defendants and Nonparty Objectors as "Movants").  See ECF Nos. 73, 84, 88.[1]

 For the reasons that follow, the Court **grants in part and denies in part** the Movants'

motion to quash.

## I. Relevant Procedural And Factual Summary

 The Court assumes the parties' familiarity with the action, including the factual summary

in the Court's Order dated March 24, 2020.  See ECF No. 77.  What follows is abbreviated

background to provide context to the instant motion.

 The SEC initiated this action, see Compl., and all Defendants answered, ECF Nos. 13,

83.[2]

 In its complaint, the SEC alleges that Defendants made false representations to induce

third parties to invest in Pristec America, Inc. ("PAI"), a partial subsidiary of Austrian

corporation Pristec AG ("PAG"), and misappropriated millions of dollars of invested funds for

their own benefit.  See ECF No. 77 at 1.  The SEC's allegations and evidence are that such

misconduct occurred from 2010 through December 2017.  See Comp. ¶¶ 23-31, 100.[3]

---

[1] The Court notes that the Nonparty Objectors' appearance occurred after the SEC argued that
the Moving Defendants did not have the necessary standing to object to the subpoenas on their
behalf.  See ECF No. 75 at 2-3; ECF No. 87 at 33.  Although the SEC has asked the Court to find
the Nonparty Objectors' appearance and joinder untimely, see ECF Nos. 84, the Court will
permit their participation in the interest of fairness.

[2] Defendants Laura and Sichenzio filed a motion to dismiss, which the Court denied in an Order
dated March 24, 2020.  See ECF No. 77.  Defendants Laura and Sichenzio's subsequent answer
contained certain affirmative defenses that are now the subject of a pending motion to strike filed
by the SEC, see ECF No. 96, the resolution of which is not relevant to the present motion.

[3] Although the SEC has at times framed the misconduct period in narrower terms – June 2013
through January 2017, the Court will also consider the 2010 to December 2017 misconduct

As relevant to the instant motion, the SEC has specifically alleged and submitted evidence that some of Defendants' misappropriation of investor funds were paid not just to themselves, but directly or indirectly to Defendants' acquaintances, friends, family members and other companies despite those recipients not having provided goods or services to PAI.  See, e.g., Compl. ¶¶ 30 (payments to Defendant Laura's friends and associates), 32 (payments to Defendant Laura's acquaintances and Defendant Laura's "Fast Break Basketball Center" business), 40 (payments to Defendant Gil de Rubio's sister), 48 (payments to unidentified businesses), 51.a (payments to contractors on behalf of Defendant Laura's sister Ms. Vagnone), 51.e (payments to Defendant Laura's friend), 52.a (payments to Defendant Laura's wife Ms. Reis and Defendant Laura's friend); Exh. J at 119:8-14, ECF No. 75-12 (Defendant Sichenzio's testimony in arbitration proceeding about PAI payments being made directly and indirectly to Defendant Sichenzio's brother); Exh. K, ECF. No. 75-11 (copy of PAI check dated May 19, 2011, made payable to Defendant Laura's sister Ms. Vagnone).

Although the SEC claims that Defendants' payment of PAI funds to their friends, family and other businesses were without those recipients having provided PAI with any compensable goods or services, Defendants claim in this action that such payments meant to reimburse those people/entities for their prior payments of PAI expenses.  See Exh. H at 4, ECF No. 75-8 (Defendant Laura's submission to SEC investigators stating that his friends and family sometimes paid PAI expenses which were then reimbursed); Exh. J at 119:8-14, ECF No. 75-12

---

period in other parts of the record in its analysis.  See Compl. ¶¶ 23-31, 100 (alleging misconduct occurring in 2010 to 2013 as well and as late as December 2017); Exh. H, ECF No. 75-8 (Defendant Laura stating that "[s]ince early 2017, [he] has paid out more in [PAI] expense than he has received in [PAI] funds); Exh. J at 5, ECF No. 75-10 (Defendant Sichenzio testifying about records dating back to 2011 relevant showing family member payments of PAI expenses); Exh. K, ECF No. 75-11 (PAI check paid to order of Defendant Laura's sister Ms. Vagnone dated May 19, 2011).

(Defendant Sichenzio's testimony in arbitration proceeding about the use of his brother and his wife Ms. Sichenzio's credit cards to pay PAI expenses); Exh. L at 243:4-244:11 (Defendant Laura testifying in arbitration proceeding that Defendants obtained credit card statements for Defendant Laura's mother, Defendant Laura's sister Ms. Vagnone, Defendant Sichenzio's brother and Defendant Sichenzio's wife Ms. Sichenzio's brother to show that payments to these family members were meant as reimbursements for expenses they paid on PAI's behalf).

The parties are presently engaged in discovery.  Movants filed the instant motion to quash the SEC subpoenas to the extent they seek records of financial accounts owned by New Vacuum, Ms. Vagnone, Ms. Reis, Ms. Sichenzio, PAI and Defendant Sichenzio as the Court will detail in Section III infra.  See ECF No. 73.  The SEC opposed, see ECF Nos. 75, and the Court heard the parties' related arguments, see ECF No. 87.  The parties thereafter made supplemental filings.  See ECF Nos. 84, 86, 88.

## II.  Legal Standard

"[A]ny subpoena that is issued to non-parties pursuant to Rule 45 is subject to Rule 26(b)(1)'s overriding relevance requirement."  Hughes v. Twenty-First Century Fox, Inc., 327 F.R.D. 55, 57 (S.D.N.Y. 2018) (citations & quotations omitted).  Rule 45 of the Federal Rules of Civil Procedure provides that "on timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it . . . subjects a person to undue burden."  Fed. R. Civ. P. 45(d)(3)(A)(iv).  Although "[t]he party issuing the subpoena bears the burden to show relevance[,]" Sec. & Exch. Comm'n v. Archer, No. 16 Civ. 3505, 2018 WL 3424449, at *1 (S.D.N.Y. July 2, 2018), once relevance is established, "[t]he movant bears the burden of persuasion in a motion to quash a non-party subpoena," Hughes, 327 F.R.D. at 57 (citing United States v. Int'l Bus. Mach. Corp., 83 F.R.D. 97, 104 (S.D.N.Y. 1979)); see Dove v. Alt. Capital

Corp., 963 F.2d 15, 19 (2d Cir. 1992); Sea Tow Intern., Inc. v. Pontin, 246 F.R.D. 421, 424

(E.D.N.Y. 2007).  "Whether a subpoena imposes an undue burden depends on 'such factors as

relevance, the need of the party for the documents, the breadth of the document request, the time

period covered by it, the particularity with which the documents are described and the burden

imposed.'"  Hughes, 327 F.R.D. at 57 (quoting Int'l Bus. Mach. Corp., 83 F.R.D. at 104).

Motions to quash are "entrusted to the sound discretion of the district court."  In re Fitch Inc.,

330 F.3d 104, 108 (2d Cir. 2003).

### III.  Discussion

The Movants' motion moves the Court to quash in whole or in part certain information

requests made in five SEC subpoenas served upon third-party financial institutions Capital One,

N.A. ("Capital"), PNC Bank ("PNC"), Two Rivers Community Bank ("Two Rivers"), Bank of

America, N.A. ("BOA"), and JPMorgan Chase, N.A. ("Chase").  For the purposes of the Court's

analysis, the contested requests are for:

(1) information pertaining to Capital and PNC financial accounts owned by Defendant
Laura-owned nonparty New Vacuum entities for a period spanning January 1, 2014, to
the present day.  See Exh. A, ECF No. 75-1 (Capital subpoena); Exh. B, ECF No. 75-2
(PNC subpoena).[4]

(2) information pertaining to:

- Two Rivers financial accounts owned by Defendant Laura's nonparty sister Ms.
Vagnone for a period spanning January 1, 2008, to the present day, see.Exh. G, ECF
No. 75-7;

- BOA financial accounts jointly owned by Defendant Laura and his nonparty wife Ms.
Reis for a period spanning December 1, 2015, to the present day, see Exh. F, ECF No.
75-6; and

- BOA financial accounts owned by Defendant Sichenzio's nonparty wife Ms.

---

[4] The Court's analysis of the objections to the SEC subpoenas for New Vacuum records appears
infra in Section III.a.

Sichenzio for a period spanning January 1, 2008, to the present day, see id.[5]

(3) information pertaining to:

- BOA financial accounts owned by PAI and Innovative Crude Technologies ("ICT")[6] for a period spanning August 1, 2017, through the present day, see id.; and

- Chase financial accounts owned by Defendant Sichenzio for a period spanning November 1, 2015, to the present day, see Exh. E, ECF No. 75-5.[7]

### a. Movants' Application To Quash The SEC's Capital And PNC Subpoenas For New Vacuum Financial Account Information Is Granted Because The Record Does Not Establish The Information's Relevance

"Evidence is relevant if it "has 'any tendency' to prove or disprove a fact of consequence in the trial." United States v. Wong, 40 F.2d 1347, 1378 (2d Cir. 1994) (citing Fed. R. Evid. 401). The Court is unable to find from this record that the requested New Vacuum financial account information is relevant. See Exh. A, ECF No. 75-1; Exh. B, ECF No. 75-2. The operative pleading appears silent about New Vacuum (for example, New Vacuum is not specifically named as an entity to which allegedly misappropriated PAI funds were paid). See Compl., passim. The SEC's opposition papers filed in connection with the instant quash application only sparingly states – without supporting evidence – that Defendant "Laura appears to be using [New Vacuum entities] to conduct Pristec business or a successor business," and asks

---

[5] The Court's analysis of the SEC subpoenas for Ms. Vagnone, Ms. Reis and Ms. Sichenzio records appears infra in Section III.b.

[6] ICT is a U.S. corporation which was owned and controlled at relevant times by Defendant Laura and Defendant Sichenzio. See Order dated March 24, 2020, at 2. At relevant times, ICT acquired a stake in PAG, and PAG and ICT jointly owned PAI. See id. Because the Court finds that its analysis of the instant dispute applies equally to its analysis of the dispute over the subpoenaed PAI and ICT records, it will hereinafter refer solely to the disputed records as PAI's but the parties are to understand the Court's ruling to apply to subpoenaed ICT information as well.

[7] The Court's analysis of the SEC subpoenas for PAI and Defendant Sichenzio records appears infra in Section III.c.

6

the Court to find New Vacuum's account information relevant on this basis.  ECF No. 75 at 4;

ECF Nos. 86-87.  The Court cannot find the SEC's threshold relevance burden satisfied with

respect to the requested New Vacuum information on such a speculative submission, and

accordingly grants Movants' application to quash the Capital and PNC subpoenas for the same.[8]

See Exh. A, ECF No. 75-1; Exh. B, ECF No. 75-2.

> **b.  Movants' Application To Quash The SEC's Two Rivers And BOA Subpoenas For Ms. Vagnone, Ms. Reis And Ms. Sichenzio Financial Account Information Is Granted In Part To Require A Modification To The Time Period Covered And Denied In All Other Respects**

> **i.  The Subpoenaed Information Is Relevant, And The SEC Needs It**

The financial account information for Ms. Vagnone, Ms. Reis and Ms. Sichenzio

requested in the SEC's Two Rivers and BOA subpoenas is relevant.  See Exh. F, ECF No. 75-6;

Exh. G, ECF No. 75-7.  When viewed against the SEC's misappropriation allegations and

evidence involving Ms. Vagnone, Ms. Reis and Ms. Sichenzio specifically as cited in some detail

supra, the subpoenas seek records that are "not merely relevant to the claims asserted, but lie[] at

the very heart of [them]."  Eastman Kodak Co. v. Camarata, 238 F.R.D. 372, 374 (W.D.N.Y.

2006); see Section I; Compl. ¶¶ 30, 32, 40, 51-52; Exhs. H-L.   The information is also relevant

to evidence of Moving Defendants' reimbursement theory defense insofar as the SEC seeks to

test whether claimed amounts of due reimbursements match or are lesser than alleged PAI funds

paid to the subject individuals.  See Eastman Kodak Co., 238 F.R.D. at 374; Section I.

For these same reasons, the SEC also plainly needs the information to make its

misappropriation claims and to test Moving Defendants' reimbursement theory defense to those

---

[8] The Court's ruling in this regard does not affect those aspects of the Capital and PNC subpoenas that do not pertain to New Vacuum information and which were not the subject of the motion.

claims.  With respect to that defense, it would be imbalanced to permit the Moving Defendants to

exploit their unique access to family members' records to self-select information without

allowing the SEC to obtain rebuttal discovery.  See Int'l Bus. Mach. Corp., 83 F.R.D. at 106

(denying motion to quash records subpoena for information about which the defendant's

chairman intended to testify to establish the government plaintiff's "clear" need given that the

documents likely contained information "from which cross-examination may be fashioned");

Exh. L (showing Defendants obtained family members' credit card statements to make this

defensive argument in other proceeding in response to misappropriation claim).

### ii.   The Time Period Covered By The Subpoenas Requires A Modification To Its Cutoff Date And Is Otherwise Reasonable

The Court's analysis of the factor pertaining to the time period covered by the contested

subpoenas has two parts.  The first part is governed by the law of this case.  Under the law-of-

the-case doctrine, "when a court has ruled on an issue, that decision should generally be adhered

to by that court in subsequent stages of the same case unless cogent and compelling reasons

militate otherwise."  In re LIBOR–Based Fin. Instruments Antitrust Litig., 27 F.Supp.3d 447,

473 (S.D.N.Y.2014) (quoting Johnson v. Holder, 564 F.3d 95, 99 (2d Cir.2009), reconsideration

denied, 2014 WL 6488219 (S.D.N.Y. Nov. 18, 2014)).  Movants argue that the Court should

modify the BOA subpoena for Ms. Sichenzio's records and the Two Rivers subpoena for Ms.

Vagnone's records so that the earliest date it may seek responsive information is June 2013,

citing the period of relevant alleged misconduct underlying the SEC's claims.  See ECF No. 73;

Exh. F, at 8 ¶ 15, ECF No. 75-6 (BOA subpoena requesting Ms. Sichenzio's records starting

from January 1, 2008); Exh. G at 7 ¶ 14 (Two Rivers subpoena requesting Ms. Vagnone's

records starting from January 1, 2008).[9]  Yet when Moving Defendants previously moved to

strike the SEC's complaint allegations pre-dating June 2013, the SEC argued that those acts

could serve as inferential proof of Moving Defendants' scienter with respect to actionable claims

within the limitations period and the Court, in denying Moving Defendants' motion, said that

"[t]he SEC may gather its evidence of pre-limitations conduct, and [Defendant Laura and

Defendant Sichenzio] may, at the appropriate time, offer their objections to the relevance and

admissibility of that evidence."  ECF No. 77 at 10.   That being the law of the case, the Court

overrules Movants' objection to the extent that the SEC's subpoenas seek information pre-dating

June 2013 on that basis.

        The second part of Movants' objection to the time period covered by the subpoenas for

Ms. Vagnone's, Ms. Reis's and Ms. Sichenzio's financial account records pertains to the

requests' cutoff date.  On their face, the subpoenas state that BOA and Two Rivers must produce

responsive financial account information through the date when they satisfy the SEC's

information requests; in other words, through and including the current calendar year 2020.  It is

unreasonable at this stage for the SEC to request responsive records through such a late date

given that its allegations of relevant misconduct extend through approximately December 31,

2017.  See Compl. ¶ 100.   The Court notes that this exceeds Movants' argument that the cutoff

date should instead be in January 2017 because certain SEC filings situate alleged misconduct as

ending then; assuming arguendo that the Court disregarded the complaint's misconduct

allegations through December 31, 2017, for that reason, it would still find December 31, 2017, to

be a reasonable cutoff for responsive information because the SEC may reasonably seek to

_____

[9] Movants' arguments about family member records pre-dating June 2013 does not apply to the
BOA subpoena's request for Ms. Reis's record, as the time period covered by that request begins
on December 1, 2015, well after June 2013.  See Exh. F at 8 ¶ 15, ECF No. 75-6.

discover similar act information post-dating complaint allegations for potential use as inferential proof on scienter.  See, e.g., Fed. R. Evid. 404(b)(2); see United States v. Segui, 2019 WL 8587291, at 10 (E.D.N.Y. Dec. 2, 2019) ("[T]he Second Circuit has declined to adopt a per se rule that subsequent . . . act evidence inherently lacks relevancy because relevancy cannot be reduced to a mere chronology.") (quotation & citation omitted); see United States v. Rutkoske, 506 F.3d 170, 177 (2d Cir. 2007) ("The courts of appeals mostly agree that the admission of subsequent acts under Rule 404(b) is governed by the same four-part test as prior acts, though some courts have recognized that the temporal relationship between the acts may have some bearing on the evidence's probative value.").  See also Section III.b infra (discussing law of the case on discovery relevant to scienter).  Accordingly, the Court will require that the SEC modify its BOA and Two Rivers subpoenas so that the cutoff for responsive information ends on December 31, 2017.[10]

### iii.  The Subpoenas Are Reasonable In The Particularity Of Their Descriptions, Their Breadth And The Burden Imposed

The particularity factor of the quash analysis requires that a subpoena "specify the documents sought with reasonable particularity, because vague or duplicative demands may cause confusion and disarray in responding to the subpoena."  Int'l Bus. Mach., Corp., 83 F.R.D. at 107.  The Court's review of the contested subpoenas finds that they are reasonable in this regard, requesting as they do financial account information which the bank addressees in particular would easily comprehend without resulting confusion.  See id. (finding that the degree to which requested documents must be specified depends on the facts and circumstances at

---

[10] In the event the SEC obtains a judgment against Defendants in this action and later requires discovery denied today for disgorgement and penalty proceedings, the Court will entertain granting the SEC leave to file a renewed motion for such discovery as appropriate at that time.

issue); see Concord Boat Corp. v. Brunswick Corp., 169 F.R.D. 44, 53 (S.D.N.Y. 1996) (finding that reasonableness of subpoenas a case specific inquiry).

The subpoenas are also reasonable in their breadth insofar as they are not "out of proportion to the end sought" given the Court's above findings about the requested information's relevance, the SEC's need for it and the time period covered (taking into account the cutoff-date modification).  In this regard, the Court additionally notes that beyond Movants' request to quash the subpoenas in their entirety or limit the time period covered (an issue the Court has already addressed above in ordering some modification), Movants have not "shown how the [SEC's] subpoena could be tailored more narrowly to obtain" the information the Court has found relevant and needed.  Griffith v. United States, No. M8-85 (JFK), 2007 WL 12222586, at *3 (S.D.N.Y. Apr. 25, 2007) (overruling movant's overbreadth objection for failure to show more tailored alternative).

"With respect to undue burden, a court is required to weigh the burden to the subpoenaed party against the value of the information to the serving party."  Libaire v. Kaplan, 760 F. Supp. 2d 288, 293 (S.D.N.Y. 2011) (citation & quotation omitted).  Here, no such burden has been established given that the Court has found the challenged subpoenas to seek relevant and necessary information and its finding that they are reasonably tailored subject to the ordered modification to their responsive cutoff date.  See Libaire, 760 F. Supp. 2d at 293.  Furthermore, although Movants have standing to object to subpoenas seeking their records from third-party banks on grounds including privacy concerns, which the Court discusses infra, they have not shown any burden in terms of having to personally prepare and produce the actual subpoena responses; that falls to the subpoenaed banks themselves.  See Snider v. Lugli, No. 10 Civ. 4026 (JFB) (AKT), 2011 WL 5401860, at *4 (E.D.N.Y. Nov. 4, 2011) (noting movant's privacy

objection did not establish burden factor in her favor); State Farm Mutual Auto. Ins. Co. v. CPT

Med. Servs., Inc., No. 04 Civ. 5045 (ILG) (KAM), 2008 WL 11429741, at *3 (E.D.N.Y. June

24, 2008) (overruling burden objection to the extent that "the subpoenas require that the banks

search, retrieve, duplicate and produce the documents and thus, impose no burden on

[objectors]").

     The Court also overrules Movants' harassment objection for the same reasons it overrules

their objection of burden.  See Libaire, 760 F. Supp. 2d at 294 (denying motion to quash

subpoenas from a "generalized assertion" that they "clearly evidence[d] an effort to harass and

unduly burden").  The Court notes that Movants' argument in this regard at least partially rests

on their belief that Defendants possess evidence of sufficient estoppel or impeachment value to

threaten at least some of the SEC's claims on summary judgment or at trial.  See generally ECF

No. 84.[11]  This is of no moment because the Court denied Moving Defendants' motion to dismiss

and the case is now in discovery.  See ECF No. 77.  Movants cannot now preclude the SEC's

entitlement to discovery in the middle of this pre-trial stage by making a new dispositive motion

on a partially developed record simply because they believe (or hope) "that [their] opponent's

position can never be legally sufficient."  Natural Resource Defense Council v. Curtis, 189

F.R.D. 4, 8-9 (D.D.C. 1999)[12]; see WHS Sales Corp. v. Cinmar, L.P., No. 06 Civ. 1938 (SHS)

(HBP), 2007 WL 486604, at *1 (S.D.N.Y. Feb. 13, 2007) ("Rather than resolve this potentially

case-dispositive issue in the context of a discovery motion, I believe that the merits . . . are better

---

[11] To the extent Movants meant for their arguments about estoppel or impeachment evidence to
influence other factors in addition to or instead of this one, the Court's conclusions about the
arguments apply equally to those contexts.

[12] The SEC vigorously disputes much of what Moving Defendants say about the legal and/or
factual significance of Moving Defendants' evidence in its filings.  See ECF Nos. 75, 86.

addressed by way of a dispositive motion before the [District Judge] to whom this matter is assigned, at the conclusion of discovery.").[13]

### iv.  Privacy Interest Protection Arguments Are Overruled

Movants further argue that Ms. Vagnone, Ms. Reis and Ms. Sichenzio have privacy interests in their financial account records that outweighs the SEC's need for the information. "While an individual has a privacy interest in his or her own personal financial affairs, even the confidentiality of personal financial matters must yield to the Federal Rules of Civil Procedure, which govern the discovery of information relevant to the claims and defenses in a federal court action."  Snider v. Lugli, No. 10 Civ. 4026 (JFB) (AKT), 2011 WL 5401860, at *5 (E.D.N.Y. Nov. 4, 2011) (citing Conopco, Inc. v. Wein, No. 05 Civ. 9899, 2007 WL 2119507, at *2 (S.D.N.Y. July 23, 2007)).  In light of the Court's determinations above about the information's relevance, necessity, and tailoring (with the directed time period modification), it finds that privacy interests do not require that the subpoenas be quashed.

### c.  Movants' Application To Quash The SEC's BOA And Chase Subpoenas For PAI And Defendant Sichenzio Financial Account Information Is Granted In Part To Require A Modification To The Time Period Covered, And Denied In All Other Respects

The Court finds the PAI and Defendant Sichenzio financial account information requested in the BOA and Chase subpoenas to be relevant to the SEC's claim allegations of fraud and misappropriation and need by the SEC for the same reasons discussed supra in Section III.b.i.  See Exh. D, ECF No. 75-4 (BOA subpoena); Exh. E, ECF No. 75-5 (Chase subpoena).

---

[13] The Court also finds Movants' harassment argument undermined by the fact that their own reimbursement theory defense heightens the relevance of the financial account information. Relatedly, the Movants' own actions that gave rise to the defense (Moving Defendants' alleged use of their family members' assets and credit to pay PAI expenses and those individuals' acquiescence) undermines Movants' argument now that the SEC seeks to learn about these purported events' significance solely to harass.

As pertinent to the requests for PAI and Defendant Sichenzio accounts specifically, the Court

notes that the SEC alleges that Defendant Sichenzio himself misappropriated PAI funds and, like

the Defendants' family members discussed <u>supra</u>, was the direct and indirect recipient of

misappropriated fund transfers made by Defendant Laura.  <u>See, e.g.</u>, Compl. ¶¶ 30, 32, 36, 40,

49, 51.g, 52.b, 54, 58, 100.  And, like Defendants' family members, the SEC alleges that

Defendant Sichenzio claims that some of this can be explained by reimbursement, although the

SEC says that this does not square with Defendant Sichenzio's net receipt of misappropriated

PAI funds.  <u>See, e.g.</u> <u>id.</u> ¶ 53.

 With respect to the time periods covered by the SEC's BOA and Chase subpoenas for

PAI and Defendant Sichenzio financial account records, the Court finds the beginning dates

reasonable and directs the SEC to modify their cutoff dates to December 31, 2017, for the same

reasons discussed <u>supra</u> in Section III.b.ii.  <u>See</u> Exh. D, ECF No. 75-4 (BOA subpoena); Exh. E,

ECF No. 75-5 (Chase subpoena).

 The Court finds the breadth, particularity and burdens of the SEC's BOA and Chase

subpoenas for PAI and Defendant Sichenzio financial account information reasonable for the

same reasons discussed <u>supra</u> in Section III.b.iii.  <u>See</u> Exh. D, ECF No. 75-4 (BOA subpoena);

Exh. E, ECF No. 75-5 (Chase subpoena).  The Court also finds that its above analysis of

Movants' privacy interest and harassment objections applies equally to those invoked by

Defendant Sichenzio.

 Movants also argue that the PAI records, if disclosed, would reveal a "trade secret or

other confidential research, development, or commercial information."  ECF No. 73 at 1.  The

Court overrules this objection as made because Movants fail to articulate their argument with any

specificity or supporting proof, as is their burden.  <u>See</u> <u>id.</u>; Fed. R. Civ. P. 26(c) (placing the

burden of showing good cause for a protective order for discovery on the basis of "trade secret or other confidential research, development, or commercial information" with the movant); Encyclopedia Brown Prods., Ltd. v. Home Box Office, Inc., 26 F. Supp. 2d 606, 613 (S.D.N.Y. 1998) (finding that the party seeking to preclude disclosure of trade secrets has the burden to show, among other things, "that the information in fact constitutes a trade secret" and "that disclosure would harm movant's competitive position"); Allied Irish Banks v. Bank of Am., N.A., 240 F.R.D. 96, 104 n.5 (S.D.N.Y. 2007) (denying privilege claim where the allegedly protected documents were not identified such that the asserting party could not meet its burden of showing privilege's applicability); Resolution Trust Corp. v. Diamond, 137 F.R.D. 634, 642 (S.D.N.Y. 1991) ("It is [the movant's] burden to submit specific information identifying each document and its contents, so that the court, in looking at the list of documents, can understand the basis on which the privilege is asserted.").

In summary, the Court finds (in part through its incorporation of its analysis in Section III.b, supra) that the SEC's BOA and Chase subpoenas for PAI and Defendant Sichenzio financial account information are reasonable subject to the directed modification of their cutoff dates as December 31, 2017.

## IV. Conclusion

For the foregoing reasons, the Court **grants in part and denies in part** Moving Defendants' motion to quash the subpoenas as follows:

- **Granted** with respect to the SEC's Capital and PNC subpoenas requesting financial account information for New Vacuum entities.  See Section III.a.

- **Granted in part and denied in part** with respect to the SEC's BOA and Two Rivers subpoenas requesting financial account information for Ms. Vagnone, Ms. Reis and Ms.

Sichenzio.  The SEC's BOA and Two Rivers subpoenas must be modified so that the cutoff date for responsive information is December 31, 2017.  Movants' application is denied in all other respects.  <u>See</u> Section III.b.

- **Granted in part and denied in part** with respect to the SEC's BOA and Chase subpoenas requesting financial account information for PAI and Defendant Sichenzio. The SEC's BOA and Chase subpoenas must be modified so that the cutoff date for responsive information is December 31, 2017.  Movants' application is denied in all other respects.   <u>See</u> Section III.c.

On or before September 11, 2020, the SEC is to modify its BOA, Two Rivers and Chase subpoenas so that their cutoff date for responsive financial account information is December 31, 2017, and re-serve them with a copy to Movants' Counsel.

Dated:  Brooklyn, New York
      August 31, 2020

*Vera M. Scanlon*
VERA M. SCANLON
United States Magistrate Judge

16