UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>-against-<br><br>JOSEPH M. LAURA, ANTHONY R. SICHENZIO and WALTER GIL DE RUBIO,<br><br>Defendants. | Case: 1:18-cv-05075 (HG)(VMS)<br><br>**<u>Oral Argument Requested</u>** |

**MEMORANDUM OF LAW IN OPPOSITION TO MOTION FOR DISGORGEMENT AND PENALTIES BY SECURITIES AND EXCHANGE COMMISSION AS AGAINST DEFENDANTS JOSEPH M. LAURA AND ANTHONY R. SICHENZIO**

**PECKAR & ABRAMSON, P.C.**
1325 Avenue of the Americas, 10th Floor
New York, NY 10019
(212) 382-0909
*Attorneys for Defendants, Joseph M. Laura and Anthony R. Sichenzio*

<u>On the Brief</u>:

Kevin J. O'Connor, Esq.

#5216340v1

**TABLE OF CONTENTS**

**Page(s)**

PRELIMINARY STATEMENT ..........................................................................................................1

FACTUAL BACKGROUND ...........................................................................................................4

LEGAL ARGUMENT .....................................................................................................................5

    POINT I .................................................................................................................................4

    THE SEC HAS NOT MET ITS BURDEN TO SHOW AN ENTITLEMENT TO DISGORGEMENT OR PENALTIES ...............................................................................5

        A.    The Disgorgement Figures for Laura Are Erroneous .................................5
        B.    The SEC's Arguments Concerning Sichenzio Are Also Erroneous ............8
        C.    The SEC's Arguments About Expenses Not Being Legitimate, Are Erroneous ...................................................................................................10

    POINT II ..............................................................................................................................11

    SHOULD THE COURT DECIDE THAT A CIVIL PENALTY IS WARRANTED, THE COURT SHOULD AWARD NO MORE THAN $140,000 AS AGAINST EACH DEFENDANT ..........................................................................................................11

        A.    The Civil Penalty Statutes ..........................................................................11
        B.    The SEC's Request For Penalties As Against Defendants Is Grossly Unreasonable and Disproportionate To What Was Set for Defendant Gil de Rubio ........................................................................................................12
        C.    A "One-Time" Tier III Statutory Penalty of $140,000 is Fair and Reasonable and Serves the Purposes of Punishment and Deterrence .........15

CONCLUSION ..............................................................................................................................16

#5216340v1

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

SEC v. Contorinis,
     743 F.3d 296 (2d Cir. 2014) .................................................................................................. 6

SEC v. First Jersey Sec., Inc.,
     101 F.3d 1450 (2d Cir. 1996) ..................................................................................... 5, 10, 11

SEC v. Fowler,
     6 F.4th 255 (2d Cir. 2021) .................................................................................................. 11

SEC v. Genovese,
     2021 WL 3501421 (S.D.N.Y. Aug. 8, 2021) ...................................................................... 14

SEC v. GTF Enter., Inc.,
     2015 WL 728159 (S.D.N.Y. Feb. 19, 2015) ....................................................................... 14

SEC v. Palmisano,
     135 F.3d 860 (2d Cir. 1988) .............................................................................................. 6, 7

SEC v. Penn,
     2017 WL 5515855 (S.D.N.Y. Aug. 22, 2017) ................................................................... 6, 7

SEC v. Rajaratnam,
     918 F.3d 36 (2d Cir. 2019) ............................................................................................ 13, 14

SEC v. Razmilovic,
     822 F. Supp.2d 234 (E.D.N.Y. 2013), aff'd in part, rev'd in part,
     738 F.3d 14 (2d Cir. 2013) ............................................................................................. 6, 11

SEC v. Rinfret,
     2020 WL 6559411 (S.D.N.Y. Nov. 9, 2020) ...................................................................... 14

**Statutes**

15 U.S.C. § 77t(d)(2)(A) ............................................................................................................ 11, 13

15 U.S.C. § 78u(d)(3)(B)(i) .............................................................................................................. 13

Exchange Act § 21(d) ...................................................................................................................... 10

Exchange Act § 21A ........................................................................................................................ 13

Securities Act § 20(d)(2) [15 U.S.C. § 77t(d)(2)(A)-(C)] ............................................................... 10

#5216340v1

**PRELIMINARY STATEMENT**

Defendants, Joseph Laura ("Laura") and Anthony Sichenzio ("Sichenzio" and, when referred to collectively with Laura, hereinafter "Defendants") respectfully submit this memorandum of law, along with the accompanying declarations with exhibits, in opposition to the motion for monetary remedies filed by Plaintiff, Securities and Exchange Commission ("SEC").

In its motion, the SEC seeks an eye-popping $6,057,036 in combined disgorgement from Laura and Sichenzio plus an additional $6,057,036 in penalties. Because the SEC's request is at odds with controlling Second Circuit case law, the language of the relevant civil penalty statutes, and the well-established purpose of monetary remedies in SEC enforcement actions, the Court should deny the SEC's motion.

The SEC brought this civil enforcement action against Defendants for their role in raising investor funds for a series of international and U.S. companies named Pristec America, Inc. (Nevada) ("PAI-NV"), Pristec America, Inc. (New Jersey) ("PAI-NJ" and, with PAI-NV, collectively referred to herein as "PAI"), and Innovative Crude Technologies, Inc. ("ICT" and with PAI-NV, PAI-NJ, the "U.S. Pristec Companies"), as well as their role in developing the relevant technology (the "Pristec Technology") through joint efforts with PAI's former (and now defunct) half-shareholder, Pristec AG, an Austrian stock company ("PAG").

Judgments entered through several related lawsuits and resulting arbitrations (which litigation was funded by Defendants for the benefit of the U.S. Pristec Companies, as is admitted by the SEC) conclusively demonstrated beyond cavil several critical facts that bear on the penalties phase. First, the SEC's accounting of monies spent in connection with the development of the Pristec Technology, is fundamentally flawed. To its credit, the SEC purports to have adjusted their disgorgement figures to reflect the fact that Defendants personally funded the five-year litigation effort against PAG and the Earles which was clearly for the benefit of the U.S. Pristec Companies

1

and their investors. By financing the litigation and taking on over $2.1 million in debt, Laura[1] defeated the efforts to convert all of the U.S. Pristec Companies' assets to themselves and deprive the investors of receiving even a penny from the companies. PAG and the Earles were shown to be trying to rip off the very investors the SEC is charged with protecting, and Defendants stopped them.

Through the expenditure of $2 million in legal fees and costs incurred by Defendants for the benefit of the U.S. Pristec Companies, Defendants established this fraud on the part of PAG in an international arbitration, and obtained a permanent injunction thwarting their unlawful efforts. When Earle refused to cooperate and honor the confirmed ICDR Award and instead sought to pursue its own "fraud" claims against the U.S. Pristec Companies, a second arbitration resulted in yet another legal victory for the U.S. Pristec Companies' investors. Earle's claim to have taken the technology rights for itself was soundly rejected by the AAA in an April, 2023 Award that has now been confirmed.

The SEC's calculations are totally at odds with the allegations of the Complaint and their Rule 26 Disclosures which identified at most $2 million that was being sought in disgorgement. Those figures also fail to properly credit Defendants for the total sum that was borrowed by them to fend off claims for the benefit of U.S. investors. Moreover, the SEC's arguments suffer from several other fundamental errors. First, with respect to Sichenzio, the Complaint properly alleges that Sichenzio agreed in 2010 to forgive debts owed to him totaling $1 million in order to gain ownership in ICT. Yet, the SEC inexplicably gives no credit to Sichenzio for those sums, while

---

[1] As set forth in the declarations, Sichenzio guaranteed $175,000 of this debt. For reasons that are unclear, the SEC only chose to give him credit for half of that amount.

asking the Court to accept as true the allegations of the Complaint that the U.S. Pristec Companies are worthless.

Second, with respect to Sichenzio, the SEC provides incomplete financial summaries by its witness, Mr. Hendelman, who failed to properly identify the full amount of funds that were loaned or advanced by Sichenzio to the U.S. Pristec Companies.  In addition to forgiving $1 million in debt to gain ownership in ICT in 2010, Sichenzio loaned and advanced the additional total sum of $1,780,553.18 to the U.S. Pristec Companies. He received back in later years the sum total of $2,181,725.80 from the companies, but also guaranteed $175,000 of debt used to fight the two arbitrations. When, as part of the weighing of the equities to ascertain whether there are "ill gotten gains," the Court considers the $1 million lost through the forgiveness of prior debt, Sichenzio's **total loss** from his involvement in the U.S. Pristec Companies is $773,827.38.

The SEC has argued that Sichenzio should not get credit for monies he advanced to the U.S. Pristec Companies because, in its view, these monies were to gain equity in the company (and, by logical extension, he is receiving a windfall by receiving valuable stock that remains his). But there are no allegations in the Complaint to this effect, nor does the motion provide any factual support for this position. Indeed, the Complaint alleges that the companies are all worthless, which means that any equity he gained is also worthless.  The SEC cannot have it both ways, asking this Court to accept some of the Complaint's facts as true, and disowning its own allegations in other respects.

Third, as concerns Laura, the SEC's calculations are, likewise, both incomplete and fundamentally overstated. First, the SEC has failed to give Laura full credit for over $2.1 million in personal loans taken by Laura to protect the U.S. Pristec Companies and the interests of their investors. Second, the SEC has failed to acknowledge that the Complaint alleges the existence of

a $1.2 million loan from the U.S. Pristec Companies to Laura that was used to document his receipt of funds over the years which was, in fact, repaid, instead choosing to characterize these advances as "misappropriation." Indeed, as is shown in the Laura Declaration, the SEC's summarizes are wholly incomplete and misleading. In every instance, the cited examples of "misappropriation" are wholly lacking in merit and are disputed by the testimony of multiple witnesses, and documentary evidence.

In sum, the SEC has applied for disgorgement and penalties in amounts totally unsupported in the record and in an amount that was never even alluded to (much less sought) in its operative Complaint. The documentary evidence shows that Defendants have not profited at all from the violations that were found in the Court's partial summary judgment order. The SEC's motion should therefore be denied.

## FACTUAL BACKGROUND

The Court is respectfully referred to the enclosed Declarations of Joseph M. Laura ("Laura Declaration") and Anthony Sichenzio ("Sichenzio Declaration").

# LEGAL ARGUMENT

# POINT I

## THE SEC HAS NOT MET ITS BURDEN TO SHOW AN ENTITLEMENT TO DISGORGEMENT OR PENALTIES

The SEC's Complaint alleged an entitlement to disgorgement because Defendants and Defendant Walter were "the only ones to benefit" from approximately $3.8 million in investor funds raised during the relevant period, and that the investors who put in money in that time period (who each own revenue share contracts or convertible notes) were left "empty handed" because there was no valid technology behind the company. At the same time, the SEC acknowledges the right of Defendants to a credit for the monies they personally incurred to preserve the Pristec Companies' assets.

In its Rule 26 Disclosures, the SEC stated that the amount of disgorgement being sought from Defendants Laura and Sichenzio amounted to only $2 million. (See Laura Decl., Ex. AF). Now, the Court is being asked to order Defendants to "disgorge" an amount that is nearly equal to the full amount raised from investors over eight years. Yet, the underlying technology rights built up by Defendants with approximately $13 million in investor funds over the years was accomplished through expenditures for the rigorous development and testing that was required, as well as a myriad of other legitimate business expenses that were needed to run this startup. In no circumstances could any Court view what the SEC seeks here--requiring Defendants to pay an amount that is nearly equal to what was raised—as being appropriate or necessary for the benefit of investors.

    A.    **The Disgorgement Figures for Laura Are Erroneous.**

"The district court has broad discretion not only in determining whether or not to order disgorgement but also in calculating the amount to be disgorged." *SEC v. First Jersey Sec., Inc.,*

101 F.3d 1450, 1474-75 (2d Cir. 1996). Should the Court decide that disgorgement is warranted, Defendants respectfully request that the Court fully credit the sums incurred by Defendants in defending the U.S. Pristec Companies, and utilize the correct calculations set forth in the Laura and Sichenzio Declarations. In doing so, the Court should reach the conclusion that no disgorgement is warranted on this record.

The Second Circuit has long recognized that the district courts may exercise their discretion to credit SEC disgorgement awards by the amount a defendant pays for working to resolve related litigation. In *First Jersey Sec., Inc.,* 101 F.3d 1450, the Court affirmed the district court's decision to credit a defendant's $5 million payment to settle a class action lawsuit when calculating a disgorgement award. The Court held that "[i]t was well within the [district] court's discretion to give defendants credit for the $5 million paid out to reimburse victims of their frauds and to require defendants to disgorge the rest of those profits." *Id.*

Similarly here, while true that the SEC acknowledges that it is obligated to credit Defendants for amounts spent litigating (and dismissing) fraud claims by the PAG and Earle antagonists, the SEC has shortchanged Defendants in what they are willing to credit. As is shown in the enclosed declarations, Defendants incurred over $2 million in fighting to preserve the U.S. Pristec Companies' technology rights, and this amount should be credited towards any disgorgement award.

Additionally, the SEC's Complaint acknowledged the existence of a loan from the U.S. Pristec Companies to Defendant Laura which summarized monies he advanced to himself from the companies, and that loan was repaid. Ordering Laura to pay disgorgement of $4,262,060 million—as the SEC requests—would require Defendant Laura to give up his alleged unjust enrichment twice, and that would serve as a punitive measure inconsistent with the equitable purpose

6

of disgorgement. *See SEC v. Contorinis,* 743 F.3d 296, 301 (2d Cir. 2014) ("[d]isgorgement is an equitable remedy, imposed to force a defendant to give up the amount by which he was unjustly enriched" and "disgorgement does not serve a punitive function") (internal quotations, brackets, and citations omitted); *SEC v. Penn,* 2017 WL 5515855, at *3 (S.D.N.Y. Aug. 22, 2017) ("Disgorgement is intended to force the defendant to give up the proceeds of his or her fraud—not to punish wrongdoing.") (citing *SEC v. Palmisano,* 135 F.3d 860, 863 (2d Cir. 1988)).

*SEC v. Razmilovic,* 822 F. Supp.2d 234 (E.D.N.Y. 2013), *aff'd in part, rev'd in part,* 738 F.3d 14 (2d Cir. 2013) is also instructive. In that case, the district court offset the amount of disgorgement the SEC was seeking by the amount the defendant CEO agreed to pay his former company (Symbol) in settling the related private litigation against the defendant. The district court, citing *First Jersey Securities,* held that "[i]n light of the vast amount of the disgorgement award, and in order to convey the fact that the award is not punitive, but only encompasses the ill-gotten gains Razmilovic realized from his fraud, I will exercise my discretion to offset the disgorgement award by any amount Razmilovic pays to Symbol to settle its claims against him." *Razmilovic,* 822 F. Supp. 2d at 277, *aff'd,* 738 F.3d at 32-33.[2]

As is detailed in the Laura Declaration, the SEC has wholly failed to properly credit monies that flowed in and out from Laura's own personal bank accounts as well as his partnership's trust account. The SEC has therefore presented a wholly misleading set of facts in an effort to saddle Laura with millions of dollars of disgorgement, which figures are arrived at through smoke and mirrors. Crediting Laura with the full $2.1 million that he borrowed to fight on behalf of the U.S.

---

[2] While the district court gave Razmilovic only twenty days to pay the full settlement amount, Defendant Laura respectfully requests that the Court afford him one year to repay the Note payable by him to the U.S. Pristec Companies. The delay in repaying the company is due to the litigation that was caused by the fraud committed by PAG and by subsequent delays incurred in establishing the legal rights of the U.S. Pristec Companies as against the Earles.

7

Pristec Companies, together with monies he repaid to the U.S. Pristec Companies over the years toward the $1.2 million note he owed to the U.S. Pristec Companies, the Court can see that no disgorgement is even warranted. This is totally consistent with the SEC's policy (approved by the courts) of ensuring that restitution is not obtained twice. *See Palmisano,* 135 F.3d at 863 (adopting SEC's concession that, "[d]efendant is only required to give back the proceeds of his securities fraud once. Thus, to the extent he pays back the victims of his securities fraud as a result of the criminal restitution order, those payments should be credited towards the disgorgement award."); *see also Penn,* 2017 WL 5515855 at *3 n.2 (ordering that any disgorgement obligation will be offset by the amount of state court's criminal restitution order that defendant has paid, or will pay, to the victims of his misconduct).

The reason underlying the SEC's policy to forego disgorgement where a defendant is ordered to pay restitution or forfeiture in a parallel criminal case is the same reason why the courts credit private settlement payments against disgorgement—to avoid making the disgorgement order a punitive sanction. *See* SEC Enforcement Division Letter to AU Grimes re: *In the Matter of William J. Sears,* Admin. Proceeding File No. 3-17547 (Aug. 7, 2020), https://www.sec.gov/litigation/apdocuments/3-17547-2020-08-07-division-response-to-july-29-2020-order.pdf ("The Commission's practice of deeming the disgorgement satisfied by the criminal forfeiture is consistent with the principle reflected in *Palmisano* and ensures that disgorgement does not become a `punitive sanction[.]'" (quoting *Liu v. SEC,* 140 S. Ct. 1936, 1940 (2020)).

Accordingly, the Court should credit these amounts against any disgorgement sought by the SEC.

### B.     The SEC's Arguments Concerning Sichenzio Are Also Erroneous.

The SEC's arguments for disgorgement as against Sichenzio rest upon incomplete financial summaries by its witness, Mr. Hendelman, who failed to properly identify the full amount of funds

that were loaned or advanced to the U.S. Pristec Companies, by Sichenzio. In addition to forgiving $1 million in debt to gain ownership in ICT in 2010, Sichenzio loaned and advanced the total sum of $1,780,553.18 to the U.S. Pristec Companies. (Sichenzio Decl., ¶¶ 23-42 & Ex. A). He received back in later years the sum total of $2,181,725.80 from the companies, but also guaranteed $175,000 of debt used to fight the two arbitrations. (*Id.* ¶ 41). When the Court considers the $1 million lost through the forgiveness of prior debt, Sichenzio's total loss from his involvement in the U.S. Pristec Companies is $773,827.38. (*Id.*, ¶ 42).

The SEC has argued that Sichenzio should not get credit for monies he advanced to the U.S. Pristec Companies because, in its view, these monies were to gain equity in the company. But there are no allegations in the Complaint to this effect, nor does the motion provide any support for this position. Moreover, in its motion the SEC repeatedly asks the Court to accept as true the allegations of the Complaint, which itself alleges

- that the U.S. Pristec Companies and its technology, are worthless, and that any and all projections about future revenues were baseless because the technology was not advanced enough to generate revenue (Cp., ¶¶ 2 & 24);

- that the U.S. Pristec Companies were unable to generate any income, much less commercialize the technology (*Id.*, ¶ 5);

- that the U.S. Pristec Companies had and has no true assets because of the ownership structure, and that all rights rested with PAG (*Id.*, ¶ 23); and

- that the U.S. Pristec Companies, in fact, had no legal right to receive any revenues at all because of the way the ownership was structured between PAG and PAI/ICT (*Id.*, ¶ 25).

As the Court may recall, the SEC had experts who were hired to prove exactly these points. This means that the equity that Sichenzio paid for at the inception of his involvement with the forgiveness of prior loans of $1 million, is worthless. He is entitled to a credit for those funds.

9

## C. The SEC's Arguments About Expenses Not Being Legitimate, Are Erroneous.

The SEC has furnished summaries of expenses by its witness, Mr. Hendelman, which fail to properly reflect the realities of this startup company. As is set forth in detail in the enclosed Declarations, the SEC is seeking disgorgement of several classes of legitimate business expenses that are not appropriately considered for disgorgement purposes. In discovery, Defendants furnished annual summaries with extensive backup which reflected expenditures made in each year from 2010 through 2017 (the period for which the SEC is seeking disgorgement). In each instance, the summary is backed up with thousands of pages of contemporaneous documentation which, in each instance, ties each line item to original company documentation.

For instance, the expense summaries show the following general categories of business expenditures that are irrefutable, yet have not been taken into account in the SEC's motion at all: telephone expenses; automobile payments (Ally)[3] auto insurance (Geico, Liberty Mutual, Progressive) expenses;[4] executive health care premiums (Oxford, Amerihealth);[5] EZ pass charges[6] for travel performed for the Pristec Companies; gym charges for executive (Fastbreakers of NY,

---

[3] Hendelman Ex. L reflects total payments of $69,789 for auto loans paid to Ally during the relevant period. This was the subject of extensive testimony by Joseph Martelli, who testified that he took the loans in his name and paid the loans. The trucks that were the subject of the loan were used for U.S. Pristec Companies' business and essentially "driven into the ground" due to the frenetic pace of operations. While the SEC was critical of the witness for not having records going back over seven years, he was not even subpoenaed until April 2021, and in the interim period had gone through a divorce where the loan records were left with his prior wife. (Laura Decl., Ex. AC, at 30:18-22-179:3).

[4] In many instances, the auto insurance was paid through the Martelli family, as indicated in the Martelli deposition.

[5] Hendelman Ex. L reflects health insurance charges of $164,807 during the relevant period.

[6] Hendelman Ex. L reflects E-Z Pass charges of $12,558 during the relevant period.

#5216340v1

No Body Denied, and "Gym");7 rental car charges (Hertz); entertainment expenses;8 hotel expenditures for business trips and associated restaurant charges; and office supplies.

As is detailed in the enclosed Declarations, the SEC's summaries of alleged misappropriation are without merit and it has failed to even consider the contemporaneous evidence of expenditures, much less the testimony of multiple witnesses.

## POINT II

### SHOULD THE COURT DECIDE THAT A CIVIL PENALTY IS WARRANTED, THE COURT SHOULD AWARD NO MORE THAN $140,000 AS AGAINST EACH DEFENDANT

#### A. The Civil Penalty Statutes.

As is accurately stated by the SEC, the civil penalty statutes of the Securities Act of 1933 (the "Securities Act") and the Exchange Act provide for three tiers of penalties. See Section 20(d)(2) of the Securities Act [15 U.S.C. § 77t(d)(2)(A)-(C)] and Section 21(d) of the Exchange Act [15 U.S.C. §s 78u(d)(3)(B)(i)-(iii)]. "The most serious of these, a Tier III civil penalty, sets a maximum penalty 'for each ... violation' that involved 'fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement,' and 'directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons.'" *SEC v. Fowler,* 6 F.4th 255, 264 (2d Cir. 2021) (citing 15 U.S.C. § 77t(d)(2)(C)). "In those cases, the maximum penalty is '$100,000 for a natural person' or 'the gross amount of the pecuniary gain to such defendant as a result of the violation,' (what we refer to as the gain clause)." Id. The SEC periodically adjusts the $100,000 maximum penalty for inflation.

---

[7] Hendelman Ex. L reflects total gym charges of $42,381 during the relevant period, plus charges for No Body Denied which appear as debits from the U.S. Pristec Companies' accounts.

[8] Hendelman Ex. L reflects dining and entertainment charges of $382,941 during the relevant period.

Although the civil penalty statutes do not define the term "violation", they do provide that "[t]he amount of the penalty shall be determined by the court in light of the facts and circumstances." See *15 U.S.C. §* 77t(d)(2)(A); 15 U.S.C. §s 78u(d)(3)(B)(i). Therefore, "[b]eyond setting the maximum penalties, the statutes leave the actual amount of the penalty ... up to the discretion of the district court." *Razmilovic,* 738 F.3d at 38.

### B. The SEC's Request For Penalties As Against Defendants Is Grossly Unreasonable and Disproportionate To What Was Set for Defendant Gil de Rubio.

The SEC's request for a $4,262,060 and $1,794,976 penalty against Laura and Sichenzio, respectively, is grossly unreasonable and unfair. It is based on a mischaracterization of the SEC's own factual allegations set forth in its Complaint and it is inconsistent with the plain language of the relevant civil penalty statutes.

First, in order to justify its request for substantial penalties, the SEC attempts to re-write the allegations in its own Complaint. Like Defendants, however, the SEC is stuck with the factual allegations in the Complaint. The Complaint specifically alleges that "[o]f the more than $3.7 million that the Defendants raised from investors since June 2013, less than half of it went to legitimate business uses. Laura misappropriated and misdirected the rest of it for his personal use – to pay his personal expenses and personal loans." (Cp., ¶ 3). This allegation of total misappropriation of approximately $1,850,000 is consistent with what the SEC said in its Rule 26 disclosures, as well, where it alleged that the total disgorgement sought was approximately $2 million. (Laura Decl., Ex. AF).

As justification for a huge penalty against Defendant Laura, the SEC cites to paragraphs 45 through 46 of the Complaint which recites a series of alleged verbal representations made to investors about planned uses of the funds being raised. Yet, those paragraphs make no specific allegations of instances where promises were made that funds would be used in any given manner,

12

and how funds were then utilized. Indeed, the SEC appears to realize this, by then shifting gears and immediately citing to prior paragraphs 29 and 30, stating that Defendant Laura, in June 2011, purchased a luxury box suite at the Meadowlands stadium; bought concert tickets; returned loan monies to Sichenzio; and made other disbursements identified in paragraph 30.

Sichenzio explains in paragraph 28 of his declaration the funds that were remitted to him as repayment of his prior loans. (Sichenzio Decl., ¶ 28). Defendant Laura provides a detailed explanation of his use of cash for the U.S. Pristec Companies, and even provides the Court with an extensive travel chart demonstrating the multiple domestic and international trips that were made to develop the technology and perform essential field testing. (*See* Laura Decl., ¶¶ 38-43 & Ex. D).

There are multiple statements in the SEC's motion that are simply unsupported by the record. By way of example and not by way of limitation, the SEC claims in its brief that paragraph 31 of the Complaint reflects an allegation that Defendant Laura misappropriated funds to "pay his white-collar defense lawyer, and spent investor funds on personal expenses like alcohol and gym fees." (SEC's Br., at 15). No such allegations are contained therein. In an effort to hook in Sichenzio with penalties, the SEC engages in an equally misleading exercise of twisting the allegations of the Complaint to suit its needs. It stretches reason for the SEC to argue that the "gross pecuniary gains" to Defendants includes millions of dollars that was clearly used for legitimate Company expenses.

*Second*, even if the Court were to agree with the SEC's arguments which seem intended to argue that the entire raise of investor funds was fraudulent, the SEC's request for such high penalties is without merit because it is inconsistent with the plain language of the civil penalty statutes. The text of the civil penalty statutes provides that the maximum penalty allowed is an

13

amount equal to the "pecuniary gain *to such defendant* as a result of the violation." *See* 15 U.S.C. § 77t(d)(2)(A); 15 U.S.C. § 78u(d)(3)(B)(i). In other words, the statutes require the maximum gain penalty to be measured by the gross pecuniary gain *to the defendant* not the gross pecuniary gain *from the violation,* as the SEC is arguing. As discussed below, the Second Circuit has recognized that this distinction has real meaning in application.

In *SEC v. Rajaratnam*, 918 F.3d 36 (2d Cir. 2019), the defendant, Raj Rajaratnam, argued that the civil penalty statute for insider trading violations, Section 21A of the Exchange Act, should be interpreted as limiting the penalty imposed on him to only the amount *of his own personal profits* from insider trading, which were far less than the collective profits to him and others who benefited from his insider trading. Specifically, Rajaratnam pointed to language in Section 21A(a)(2) stating that the maximum penalty for violations "shall not exceed three times the profit gained or loss avoided as a result of such unlawful purchase, sale or communication." 917 F.3d at 42 (quoting 15 U.S.C. § 78u-1(a)(2)).

Ultimately, the Court rejected Rajaratnam's interpretation of Section 21A, concluding that it did not limit civil penalties for insider trading to a defendant's personal trading profits. *Id.* at 43. In reaching its decision, the Court distinguished the language of Section 21A from the language of the penalty statutes under the securities laws. Specifically, the Court recognized that Section 21A does *not* contain the same language found in the securities laws which serve to limit the maximum penalty amount to the personal profits obtained by the defendant. The Court wrote:

> Our interpretation of the statute [Section 21A] is confirmed by the fact that elsewhere in the federal securities laws Congress expressly limited the "amount of the penalty" for particular violations to the "gross amount of pecuniary gain to such defendant as a result of the violation." *See, e.g.,* Securities Act Section 20(d)(2), 15 U.S.C. §§ 77t(d)(2)(A), (B), (C); Exchange Act Section 21(d), 15 U.S.C. §§ 78u(d)(3)(B)(I), (ii), (iii) . . .

*Id.* at 43 (emphasis in original).

14

### C. A "One-Time" Tier III Statutory Penalty of $140,000 is Fair and Reasonable and Serves the Purposes of Punishment and Deterrence.

Should the Court decide that a civil penalty is warranted, Defendants respectfully submit that the Court should not impose a "maximum gain" penalty as the SEC is requesting, but rather should impose no more than a "one-time" Tier III penalty of $140,000 as against each of Sichenzio and Laura. This amount is consistent with what was imposed against Defendant Gil de Rubio. This total civil penalty amount is fair and reasonable and fully serves the purposes of punishment and deterrence.

Given the broad discretion the district courts are afforded to fashion an appropriate civil penalty in SEC enforcement cases, the "courts in this district have adopted a range of approaches to determining what constitutes a 'violation' for purposes of imposing civil penalties." *SEC v. Genovese,* 2021 WL 3501421, at *13 (S.D.N.Y. Aug. 8, 2021). One approach the district courts have adopted for natural person defendants is to impose a single "one-time" penalty for the entirety of the alleged scheme. *See, e.g., SEC v. Rinfret,* 2020 WL 6559411, at *8 (S.D.N.Y. Nov. 9, 2020) (default judgment award imposing a one-time statutory penalty of $160,000 against individual defendant); *SEC v. GTF Enter., Inc.,* 2015 WL 728159, at *4 (S.D.N.Y. Feb. 19, 2015) (default judgment award imposing a one-time statutory penalty of $130,000 against individual defendant).

Here, Defendant Gil de Rubio was assessed a penalty of $140,000. As is clear from the accompanying declarations, Defendant Sichenzio has suffered economically from his involvement with the Pristec Companies and has suffered a net loss exceeding $750,000. Defendant Laura has taken on substantial debt in order to protect the U.S. Pristec Companies. Due to the circumstances beyond their control (the fraud perpetrated by PAG, as found by the ICDR), and the later litigation with the Earles wherein the license rights of the U.S. Pristec Companies were protected yet again from claims of fraud which were rejected), this has impaired the ability of either defendant to pay

15

any disgorgement or penalty. These factors each should be considered given the limited ability to pay any penalty imposed by the Court.

Defendants submit that a one-time Tier III penalty in the amount of $140,000 is sufficient to serve the purposes of punishment and deterrence.

## **CONCLUSION**

Accordingly, for all of the reasons discussed above, should the Court determine that monetary relief is warranted against Defendants, they respectfully request that the Court decline to award disgorgement as against either Defendant, and grant no more than a "one-time" Tier III penalty of $140,000.

Dated:  New York, New York
       January 5, 2024

PECKAR & ABRAMSON, P.C.

By: */s/ Kevin J. O'Connor, Esq.*
    KEVIN J. O'CONNOR, ESQ.
    1325 Avenue of the Americas
    10th Floor
    New York NY 10019
    (212) 382-0909
    *Attorneys for Defendants, Joseph*
    *M. Laura and Anthony R. Sichenzio*